UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GERALD D. LEWIS,

Plaintiff,

v.

CHARLES CALVERT, et al.,

Defendants.

CAUSE NO. 3:23-CV-057-DRL-SJF

REPORT & RECOMMENDATION

Gerald D. Lewis, a prisoner without a lawyer, is proceeding in this case "against Lieutenant Charles Calvert and Sergeant Lucas Neidlinger in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his breathing, dizziness, and fainting issues on September 8, 2022, in violation of the Eighth Amendment[.]" ECF 17 at 6. The defendants moved for summary judgment, arguing Mr. Lewis did not exhaust his administrative remedies before filing suit. ECF 25. The motion was denied because the court found there was a genuine dispute about whether administrative remedies were available to Mr. Lewis. ECF 40. Specifically:

> [A] genuine issue exists regarding whether Mr. Lewis signed and returned the November 17, 2022, Grievance Response Report to the grievance office. If the court concludes Mr. Lewis signed and returned the Grievance Response Report to the grievance office but never received an appeal form, then the grievance office made Mr. Lewis' administrative remedies unavailable.

*Id.* at 4. Judge Damon R. Leichty referred the case to the undersigned "to conduct an evidentiary hearing and prepare a report and recommendation as provided for by *Pavey*

*v. Conley*, 544 F.3d 739 (7th Cir. 2008) to determine whether the grievance office made Gerald D. Lewis's administrative remedies unavailable by ignoring his request for an appeal form as described above." ECF 42 at 2. Limited discovery was conducted in the form of a deposition of Mr. Lewis by the defendants. On November 6, 2025, a *Pavey* hearing was held. ECF 74. Mr. Lewis appeared in person *pro se*, while the defendants appeared by Attorney Elijah B. Mollet. *Id*. The matter is now ripe for adjudication.

### I.   HEARING LOGISTICS

A copy of the exhibit and witness list is available at ECF 75. The defendants called Mr. Lewis, Michael Gapski, the grievance specialist at the Miami Correctional Facility (MCF), and Angela Heishman, the litigation liaison and grievance supervisor at MCF, to testify. *See id*. The following exhibits were admitted: Exhibit A – Offender Grievance 146283, Receipt, & Response Report (ECF 73-3); Exhibit B – Offender Grievance Response Report Submitted by Lewis with Response to MSJ (ECF 73-4; *see also* ECF 33-1 at 4); Exhibit C – Request for Interview dated 11-23-22 (ECF 73-5; *see also* ECF 33-1 at 5); Exhibit D – Offender Grievance Policy/Process from 2022 (ECF 73-1); and Exhibit E – History of Grievances for Offender Lewis (ECF 73-2). *See id*. Mr. Lewis did not present any additional exhibits or call other witnesses, but he did testify on his own behalf. All witnesses were placed under oath by the court before testifying.

II.    FINDINGS OF FACT[1]

In 2022, MCF had an Offender Grievance Policy/Process (the Process) in place under which inmates could grieve a broad range of issues, including their living conditions, retaliation for use of the grievance process, and the actions of prison staff. Copies of the Process were posted throughout Miami, including in the law library. Mr. Gapski testified inmates were made aware of the Process during facility orientation and that copies were available in the law library and from their counselors. The Process had three steps: (1) an attempt at informal resolution to solve a problem followed by a formal grievance submission; (2) a written Level 1 Appeal to the Warden/designee; and (3) a written Level 2 Appeal to the Department Grievance Manager at the Indiana Department of Correction central office. Per the Process, offenders were required to submit grievances on State Form 45471 to the grievance specialist no later than ten (10) business days from the date of the incident. Mr. Gapski testified the grievances could be submitted by placing them in a mailbag at night—which would get to his mailbox the next day—by putting them in the counselor box, by handing them directly to a counselor, or by dropping them in a mailbox near the chow halls. All grievances would eventually be routed directly to him. After a grievance was submitted, it underwent a screening process to determine whether it should be accepted and recorded or rejected.[2]

---

[1] In making the findings of fact, the court considered the admitted exhibits, the previous deposition of Mr. Lewis, and the credibility of the witnesses at the *Pavey* hearing. The transcript from the *Pavey* hearing is available at ECF 76.

[2] Grievances were rejected and returned to the offender unfiled if they didn't meet the standards set forth in section X, subsection A of the Process. *See* Def. Ex. D "Offender Grievance Policy/Process" (ECF 73-1 at 9–10).

If a grievance was accepted, a receipt would be sent to the grieving offender. If an offender didn't receive a grievance response within twenty (20) business days of the receipt, he could initiate a Level 1 Appeal as though it has been denied. Records of all grievances submitted at MCF are filed, maintained, and stored. Specifically, Mr. Gapski testified the records are originally filed in the grievance specialist's office for several years before being placed into legal boxes and moved to a room across the hall. After five or six years, records are transferred to MCF's storage warehouse. Additionally, the records are sorted and maintained in the computer system, and copies are placed in the offender packets. *See generally* Def. Ex. D "Offender Grievance Policy/Process" (ECF 73-1); *see also* Testimony of Michael Gapski, Hearing Tr. (ECF 76 at 32–41).

Ms. Heishman, the litigation liaison and grievance supervisor at MCF, testified consistently with Mr. Gapski. Specifically, she noted that original documentation for all grievances filed are stored in the grievance office, electronically in the DELTA system, and also in offender packets. As to the offender packets, they are held in the "packet room" which is under the supervision of the classification department. According to Ms. Heishman, the room is under lock and key and only designated staff are allowed to enter it. If an offender wishes to access their offender packet, they must send a request slip to the assigned unit team staff member. Whenever such a review is completed, State Form 36083 is filled out documenting the details of the review—namely, the offender's name and IDOC number, the date of the review, who was present during it, and what

documents, if any, were requested to be copied.[3] All State Form 36083's are kept in the relevant offender packets. An IDOC staff member remains present during the entire review process. *See* Testimony of Angela Heishman, <u>Hearing Tr.</u> (ECF 76 at 63–68).

Mr. Gapski reviewed Mr. Lewis's grievance history as part of his responding role in this lawsuit. The report he reviewed was run on October 20, 2023, and included all accepted grievances Mr. Lewis had filed up until that date. According to the report, Mr. Lewis submitted one properly-filed grievance related to the incident on September 8, 2022—namely, Offender Grievance 146283—and one unrelated grievance in May 2023. *See* <u>Def. Ex. E</u> "History of Grievances for Offender Lewis" (ECF 73-2). Grievance 146283 was accepted and signed by Mr. Gapski on October 20, 2022, and the receipt indicates it was received that same day. *See* <u>Def. Ex. A</u> "Offender Grievance 146283, Receipt, & Response Report" (ECF 73-3 at 1–2). The corresponding Grievance Response Report was signed, dated, and issued by Mr. Gapski on November 17, 2022, and states:

> While looking into this matter, Lt. C. Calvert was contacted. He states, 'I didn't speak to any individuals, the matter has been handled.' This incident has been turned over to custody supervisors for evaluation. The results of that investigation will not be shared. We apologize for any delay you had in getting to OSB. We have educated staff on how to better handle this situation.

*Id*. at 3. Below Mr. Gapski's signature on that form is a space for the offender to sign, date, and check whether he agreed or disagreed with the response.[4] The Grievance

---

[3] Offenders are charged for copies requested, and those charges are reflected within the offender's trust account.

[4] Per the Process, if an offender disagreed with the response, he had five (5) business days to appeal it. *See* <u>Def. Ex. D</u> "Offender Grievance Policy/Process" (ECF 73-1 at 12).

Response Report related to Grievance 146283 in MCF's records is blank beneath Mr. Gapski's signature—neither Mr. Lewis's signature nor any other handwritten marking appears on it. *Id*. Mr. Gapski testified that if a form signed by the offender and marked "disagree" would have been received, it would have immediately begun the appeal process. Furthermore, records of that document plus any additional appellate documents would have been maintained by MCF both in physical and electronic form. During his review, Mr. Gapski did not locate any documents showing Mr. Lewis attempted to appeal Grievance 146283 in any way. *See* Testimony of Michael Gapski, Hearing Tr. (ECF 76 at 41–47). Ms. Heishman testified that she also reviewed the relevant records in this case in September of 2025, and her search was consistent with Mr. Gapski's—the Grievance Response Report related to Offender Grievance 146283 in MCF's records does not contain Mr. Lewis's signature or any notation that he disagreed with the response or was attempting to appeal it. Ms. Heishman was not able to locate the purported signed copy submitted by Mr. Lewis with his response to the summary judgment motion. *See* Testimony of Angela Heishman, Hearing Tr. (ECF 76 at 68–71).

Yet, in response to the defendants' motion for summary judgment, Mr. Lewis did submit what he purported to be a copy of that Grievance Response Report which was signed by him, dated November 18, 2022, and checked "disagree." *See* Def. Ex. B "Offender Grievance Response Report Submitted by Lewis with Response to MSJ" (ECF 73-4; *see also* ECF 33-1 at 4). As noted above, Mr. Gapski testified there is no record of that copy in MCF's physical or electronic files. When asked about that document at the hearing, Mr. Lewis acknowledged he received the Grievance Response Report on

6

November 17, 2022, the same day Mr. Gapski signed it. He claimed he attempted to appeal it by checking "disagree" that evening, and then signing it, dating it as of November 18, 2022, and turning it in to the counselor box in the morning on his way to work. *See* Testimony of Gerald Lewis, Hearing Tr. (ECF 76 at 14–17). According to Mr. Lewis's testimony at the Pavey *hearing*, he had an officer make him a copy of that signed document the night before he turned it in, which is why he had a copy to submit with his response to the summary judgment motion:

> Q. Mr. Lewis, can you tell me, is this a -- or how you came into possession of this document.
> A. A copy of what I turned in.
> Q. And can you tell me when this copy was made.
> A. The night before.
> Q. The night before. So your contention is that you made a copy of this document before turning it in for your appeal; is that correct?
> A. Yes.
> Q. Can you tell me who you requested to have a copy of this made from.
> A. It was an officer that was working that night.
> Q. And that officer made the copy for you and returned it to you?
> A. Yes.
> Q. Is this a true and accurate copy of the document which you included with your response in defendants' motion for summary judgment on exhaustion?
> A. Yes.

*Id.* at 18. Counsel proceeded to ask Mr. Lewis whether he had maintained possession of that copy since he submitted the original to initiate his grievance appeal, and Mr. Lewis responded, "Yes, sir, I did." *Id.* at 19.[5]

---

[5] After being confronted with his prior inconsistent deposition testimony below, Mr. Lewis later testified that he didn't have possession of it for a period of time: "Q. So it's your contention now that at some point you no longer possessed the signed and hand-annotated 'Disagree' response form; is that correct? A. Yes." ECF 76 at 23.

However, as pointed out by counsel during the *Pavey* hearing for impeachment purposes, Mr. Lewis previously testified inconsistently with these assertions during his September 12, 2025, deposition as follows:

> Q. Did you ask for a copy?
> A. I want to -- yeah, I wrote a report and asked for a copy of it.
> Q. You said you requested a copy of it via request form?
> A. Yes, because the caseworkers, they weren't available.
> Q. Did you receive a copy?
> A. No.
> Q. So, you did not receive a copy of the version of the response form where you checked disagree, signed your name and put the date?
> A. I did not.
> . . . .
> Q. Okay. So, it's your testimony that you did not receive a copy of the version of the response report that you checked disagree on, signed your name and put the date as 11/18/2022. If that's the case, how do you have this form so as to attach it as Exhibit 4?
> A. I requested to review my inmate packet.

Deposition of Gerald Lewis, <u>Dep. Tr</u>. (ECF 73-10 at 41–43; *see also* ECF 67-1 at 41–43).

When questioned further by counsel during the *Pavey* hearing, Mr. Lewis testified that he received a copy of that signed Grievance Response Report both from an officer the night he initially received it and also when he requested his offender packet several weeks later.[6] According to Mr. Lewis, he requested his offender packet several weeks later by filling out a request for interview form and giving it to his counselor. He

---

[6] Towards the end of the hearing, Mr. Lewis also presented his own testimony during his self-direct examination, and he asserted for the first time that he attempted to have *two* copies of the signed Grievance Response Report made upon receipt—one by a "former employee" the night he received it and one via a request to his caseworker the next morning. He claims he never received the copy from the caseworker. However, he then testified that he "made more than one copy" and "put one in the box, and I gave one to a counselor" the next morning. *See* Testimony of Gerald Lewis, <u>Hearing Tr.</u> (ECF 76 at 77–80). This testimony is confusing and inconsistent.

testified that he reviewed the offender packet in person in a "visiting room" and asked for a copy of that specific document. *See* Testimony of Gerald Lewis, Hearing Tr. (ECF 76 at 23–25). On the other hand, Ms. Heishman testified that—despite a detailed review of Mr. Lewis's offender packet—she didn't find a State Form 36083 from Mr. Lewis corresponding to a request to review his offender packet at any time near September 2022 or the following months. In fact, the most recent State Form 36083 in Mr. Lewis's offender packet is dated November 17, 2021, which is prior to the events at issue here. Furthermore, Ms. Heishman testified that she reviewed Mr. Lewis's offender trust fund account from July 1, 2022, to June 1, 2023, and she did not see any indication that Mr. Lewis had paid for or received copies of documents during that time. *See* Testimony of Angela Heishman, Hearing Tr. (ECF 76 at 70–73).

Finally, regarding request for interview slips, Mr. Gapski testified that pink copies of any interview slips he receives are kept in the grievance office in files organized by the year. He testified that he reviewed the relevant file and did not locate any request for interview slips from Mr. Lewis related to Grievance 146283. *See* Testimony of Michael Gapski, Hearing Tr. (ECF 76 at 49–50). However, Mr. Lewis filed a request for interview slip dated November 23, 2022, with his response to the defendants' motion for summary judgment. *See* Def. Ex. C "Request for Interview dated 11-23-22" (ECF 73-5; *see also* ECF 33-1 at 5). That request states, "May I have a grievance appeal form so I can appeal the decision of my level 1 grievance #146283. Please and thank you!" *Id*. During the *Pavey* hearing, Mr. Lewis testified that he submitted this request for interview slip by placing it into the counselor box on November 23, 2022.

When asked how he came into possession of the copy he filed with his summary judgment response, Mr. Lewis testified that he didn't receive a photocopy but rather "wrote it up" as a "duplicate handwritten request." *See* Testimony of Gerlad Lewis, Hearing Tr. (ECF 76 at 27–29).

### III.   ANALYSIS OF THE EVIDENCE

In the Prison Litigation Reform Act ("PLRA"), Congress mandated that prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). Thus, to exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.*

Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.

10

2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Based on the evidence presented here—including careful consideration of the credibility and demeanor of the witnesses during the hearing, as well as a review of the relevant evidence submitted over the course of this litigation—the court finds that Mr. Lewis did not produce credible evidence he signed and returned the November 17, 2022, Grievance Response Report to the grievance office or otherwise requested an appeal form related to Grievance 146283. During the *Pavey* hearing, both Mr. Gapski and Ms. Heishman explained, in detail, how the grievance process functions and how records are maintained on multiple levels—including being stored in the grievance office, electronically in the DELTA system, and in offender packets. Despite this, neither Mr. Gapski's nor Ms. Heishman's search of the relevant records revealed a copy of any such document(s) in either the physical or electronic files at MCF. The court finds that Mr. Gapski and Ms. Heishman testified credibly, consistently with each other, and persuasively regarding this fact throughout the *Pavey* hearing.

Mr. Lewis's conflicting and confusing testimony, on the other hand, damages his credibility. During his September 12, 2025, deposition, Mr. Lewis testified that he did

*not* initially receive a copy of the Grievance Response Report he allegedly signed, dated, and disagreed with despite having asked for it. He claimed he only later received it following a review of his offender packet. During the *Pavey* hearing, however, Mr. Lewis specifically testified that he had an officer make him a copy of that signed Grievance Response Report the night before he turned it in. When presented with the clear inconsistency between the prior testimony and his current testimony, Mr. Lewis offered no plausible explanation for the difference. Moreover, although Mr. Lewis claims he later received a copy pursuant to a review of his offender packet, Ms. Heishman testified credibly that no State Form 36083—which would signify that an offender packet review was conducted—exists in Mr. Lewis's offender packet from that time period. This testimony is bolstered by the fact that Mr. Lewis's trust fund account does not show any funds were deducted for copies from July 1, 2022, to June 1, 2023. Thus, the court finds Mr. Lewis's contention that he received a copy of the signed Grievance Response Report—either via an officer the night before he allegedly turned it back in or via a later review of his offender packet—to lack credibility.[7]

The combined impact of Mr. Lewis's inconsistent testimony with the fact that the defendants presented credible evidence that no copies of the signed Grievance Response Report or any subsequent attempts to appeal Grievance 146283 exist in the

---

[7] Additionally, although Mr. Lewis claims he asked for an appeal form by submitting a request for interview slip dated November 23, 2022—which he filed with his summary judgment response—the defendants testified credibly that no such document exists in their records. The court does not find Mr. Lewis's explanation that he "wrote it up" and retained a duplicate, handwritten copy to be particularly likely, convincing, or credible, especially considering his testimony that he had asked for photocopies of other documents.

records at MCF weighs heavily against Mr. Lewis's version of events and leads the court to conclude it is more likely he created the signed Grievance Response Report after-the-fact for use in this lawsuit in an attempt to avoid dismissal.

### IV.    CONCLUSION

For the reasons set forth above, the court finds that Gerald D. Lewis did not produce credible evidence he signed and returned the November 17, 2022, Grievance Response Report to the grievance office or otherwise requested an appeal form. As such, Mr. Lewis did not pursue an appeal of Grievance 146283 as was required to complete the administrative process. Therefore, the court **RECOMMENDS** that the claims against Lieutenant Charles Calvert and Sergeant Lucas Neidlinger be **DISMISSED WITHOUT PREJUDICE** for Mr. Lewis's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**NOTICE IS HEREBY GIVEN** that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). Failure to file objections within the specified time waives the right to appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996).

SO ORDERED on March 20, 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge

13